UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Norfolk Southern Railway Company, ) | Civil Action No.: 4:13-cv-01264-BHH |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | **OPINION AND ORDER** |
| The Baltimore and Annapolis ) | |
| Railroad Company d/b/a Carolina ) | |
| Southern Railroad Company and ) | |
| d/b/a Waccamaw Coast Line ) | |
| Railroad Company, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the Court on the motion of the plaintiff, Norfolk Southern Railway Company ("Norfolk Southern"), for summary judgment (ECF No. 33). The Court held a hearing on the motion on November 19, 2014, and took the motion under advisement. For the reasons set forth herein, the motion for summary judgment is granted in part and denied in part.

**BACKGROUND**

The defendant, Baltimore and Annapolis Railroad d/b/a Carolina Southern Railroad Company and d/b/a Waccamaw Coast Line Railroad Company ("B&A"), is a small railroad company with annual revenues of less than $5 million. (Def's Resp. in Opp'n to Pl's Mot. for Summ. J., 1, ECF No. 42.) It owns 80 miles of track and 187 bridges. (Dep. of Ken Pippin 9:11-13, 11:7-10, Dec. 13, 2013, ECF No. 33-6.) B&A often rents railcars from larger railroad companies, including Norfolk Southern, a Class I railroad with annual revenues exceeding $10 billion. (ECF No. 42 at 2.) Both Norfolk

Southern and B&A are subscribers to the Association of American Railroads' ("AAR") Car Hire Rules, which set the rates for hiring railcars and the rules for their processing. (Answer ¶ 8, ECF No. 8.) The companies who participate in this system use computers to track the railcars and calculate the "car hire" that has accrued for use of the car. (Pippin Dep. 8:19 – 10:6.) Norfolk Southern suggests that the system is comparable to renting a vehicle from a rent-a-car business. (Pl.'s Mem. in Supp. of Summ. J. 1, ECF No. 33-1.) Norfolk Southern brought this lawsuit against B&A to recover car hire charges that it claims are due and unpaid. Some of these charges are simply unpaid without explanation, but most of them relate to a number of railcars that have become "stranded." (*Id.* at 4.)

### Non-Stranded Railcars

Between October 2010 and August 2011, B&A made use of a number of Norfolk Southern-owned railcars for shipments on its rail lines. During this time period, B&A accrued, but failed to pay, $26,559.53 in car hire charges for Norfolk Southern-owned railcars. (*See* ECF No. 33-7.) B&A does not dispute that it owes these charges.

### Stranded Railcars

Between May 24 and May 26, 2011, the Federal Railroad Administration ("FRA") evaluated 52 of B&A's bridges and "documented a pervasive level of significant deterioration of critical members of timber bridges over which [B&A] operates." (ECF No. 42-1.) In response to the FRA evaluation, B&A agreed to voluntarily cease operations over seven of its bridges until repairs could be made and the safety of the bridges could be certified. (ECF No. 42-3.) As a result of the closure of these bridges, 50 railcars that B&A had hired, including 31 cars owned by Norfolk Southern (the "NFS

Cars") became stranded on portions of B&A's railroad. (ECF No. 42 at 2.) B&A sought an exemption from the FRA to allow it to return the NFS Cars, but the request was denied. In order to be able to return the NFS Cars, B&A must either (1) fix the bridges in question, or (2) find another way to ship the cars back to Norfolk Southern. Both parties seem to agree that it would be possible to load the NFS Cars onto flatbed trucks to transfer them to other rail lines on which they could be returned to Norfolk Southern, but there appears to be some dispute over the feasibility and cost of such measures.

B&A claims that it has not repaired the bridges because it lacks the cash required to do so. (*See* ECF No. 42-5.) Norfolk Southern alleged at the hearing that, despite its liquidity issues, B&A has substantial assets that could be used or pledged as collateral to enable B&A to return the NFS Cars. B&A notified Norfolk Southern of the closure of its bridges and sought relief from the car hire charges, which Norfolk Southern refused.

The parties appear to agree that under the Car Hire Rules, the charges on the NFS Cars continue to accrue, although B&A challenges the extent of damages on the grounds that Norfolk Southern has failed to mitigate its damages. Norfolk Southern submitted tables with its motion for summary judgment showing the car hire charges that have accrued and projecting charges into the future. (*See* ECF Nos. 33-10, 33-11, & 33-12.) At the time it filed its motion, April of 2014, Norfolk Southern claimed that B&A owed it $338,037.12 in car hire charges for the NFS Cars, and the amount appears to be increasing by around $11,000 per month.

## **STANDARD OF REVIEW**

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a).  In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The moving party has the burden of proving that summary judgment is appropriate.  When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).  A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985).  Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

"[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996).  "Summary

judgment is proper only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).  The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## DISCUSSION

B&A has not disputed that it owes Norfolk Southern the car hire alleged under the Car Hire Rules.  Instead, B&A has asserted two affirmative defenses, (1) impossibility/commercial impracticability and (2) failure to mitigate damages, which will be discussed in turn.

### 1. Impossibility/Commercial Impracticability

"A party to a contract must perform its obligations under the contract unless its performance is rendered impossible by an act of God, the law, or by a third party. *Hawkins v. Greenwood Dev. Corp.*, 328 S.C. 585, 593, 493 S.E.2d 875, 879 (S.C. Ct. App. 1997).  It is not enough that performance of the obligation is "improbable or out of the power of the obligor."  *Id.*  Unless it is established that the obligation "cannot by any means be accomplished," it is not considered impossible.  *Id.*; s*ee also* 62B Am. Jur. 2d Private Franchise Contracts § 228 ("as a general rule, unexpected difficulty, expense, or hardship involved in performance will not excuse performance where performance has not become objectively impossible."). Put differently, subjective impossibility is not a defense.  A party's inability "to perform a contract because of his inability to obtain money . . . will not ordinarily excuse nonperformance in the absence of a contract

provision in that regard." *Moon v. Jordan*, 301 S.C. 161, 164 390 S.E.2d 488, 490 (S.C. Ct. App. 1990).

B&A has directed the Court to no South Carolina authority supporting its contention that "commercial impracticability" is a defense. B&A suggests that it is the unfortunate victim of a government-imposed "embargo" that has left it with no options. B&A does not allege that it is objectively impossible to repair the bridges in question or move the NFS Cars through alternate means, but merely that it lacks the funds to do so. Thus, B&A's argument is really that returning the NFS Cars is commercially impracticable, which is not a defense under South Carolina law.

B&A also argues that by July of 2013, performance had become impossible because Horry County terminated a lease agreement with B&A relating to the property where the stranded NFS Cars are located:

> At the time of the termination of this lease in July 2013, Plaintiff's railcars were no longer located on Defendant's property and Defendant no longer had access to the railcars. From the time of the termination of the lease with Horry County to the present, Defendant has had no control to return these railcars to the Plaintiff nor are they responsible for the accrual of car hire charges. From the date Plaintiff was notified their railcars were located on a part of the line owned by Horry County *Ex. G* it becomes the Plaintiff's responsibility to coordinate with the County with regards to the retrieval of their railcars.

(ECF No. 42 at 6.) Again, B&A cites no law to support the argument that this circumstance constitutes impossibility, and it would create perverse incentives if a party to a contract could shirk its obligation to return the other party's property simply by abandoning it on a third party's land. Furthermore, B&A offers no evidence to suggest that Horry County is refusing or would refuse to allow B&A to retrieve the NFS Cars

from the relevant property.  Accordingly, the Court rejects B&A's impossibility/ impracticability argument.

## 2. Norfolk Southern's Failure To Mitigate Its Damages

Under South Carolina law, "[a] party who has suffered injury or damage from the actionable conduct of another is under a duty to make all reasonable efforts to minimize the damages incurred and cannot recover damages that might have been avoided by the use of reasonable care and diligence." *Hughes v. Oconee Cnty., S.C.*, No. 2007-UP-461, 2007 WL 8392131, at *5 (S.C. Ct. App. 2007).  "[H]owever, the law does not require unreasonable exertion or substantial[1] expense for this to be accomplished." *Genovese v. Bergeron*, 327 S.C. 567, 572, 490 S.E.2d 608, 611 (S.C. Ct. App. 1997) (footnote added).  Furthermore, a "plaintiff is not required to act where he does not know he needs to, where he cannot financially afford to, where he is assured by the defendant that action is unnecessary, or where action would violate someone else's rights."  11 S.C. Jur. Damages § 7.  "A failure to attempt to mitigate damages will not bar plaintiff *entirely* from a recovery, but will only prevent the recovery of such damages as might have been avoided by reasonable efforts on his or her part." *Rapid Indus., Inc. v. Indus. Serv. Works, Inc.*, No. 2007-UP-083, 2007 WL 8326617, at *1 (S.C. Ct. App. Feb. 15, 2007) (quoting 25 C.J.S. *Damages* § 47 (Supp. 2006)).  Finally, as the Fourth Circuit has observed, "the reasonableness of mitigation is a question of fact" that is

---

[1] The term "substantial expense" cannot be defined in a vacuum or in absolute terms.  What is substantial to an individual or a small business may be of virtually no consequence to a large company.  Thus, in interpreting this term, the Court considers the cost and difficulty of the proposed mitigation in light of the size and capabilities of the relevant party.

"properly resolved by a jury." *C & O Motors, Inc. v. Gen. Motors Corp.*, 323 F. App'x 193, 197 (4th Cir. 2009).

Norfolk Southern argues that B&A should not survive summary judgment on the issue of mitigation because (1) it failed to plead lack of mitigation as an affirmative defense, and (2) it has not advanced sufficient evidence to show that mitigation was possible and cost-effective.

### A. B&A failed to plead lack of mitigation as an affirmative defense

First, Norfolk Southern argues that B&A has waived its mitigation argument because mitigation is an affirmative defense that must be raised in the pleadings under Federal Rule of Civil Procedure 8. *See S. Wallace Edwards & Sons, Inc. v. Cincinnati Ins. Co.*, 353 F.3d 367, 373 (4th Cir. 2003) (noting that an affirmative defense that is not raised is typically waived, particularly where the untimely addition of the defense prejudices the plaintiff or creates unfair surprise). B&A's answer, which was drafted by counsel who is no longer involved in this case, does not specifically allege a failure to mitigate as an affirmative defense, however, one of its unnamed defenses does contain language implying that Norfolk Southern should mitigate its damages. (*See* Answer to Amended Complaint ¶ 23, ECF No. 15 ("The Defendant would further show that it has offered to allow the Plaintiff to retrieve its rail cars.").)

While B&A should have clearly and explicitly asserted a failure to mitigate damages as an affirmative defense in its answer, there is evidence in the record suggesting that Norfolk Southern knew that mitigation was an issue and was considering the steps it might take to retrieve the NFS Cars. On March 5, 2012, B&A advised Norfolk Southern that it was not able to return the NFS Cars because it had

been forced to close its bridges and it lacked the funds to make the costly repairs necessary to allow the bridges to reopen.  (*See* ECF No. 42-5.)  Email correspondence between several Norfolk Southern employees regarding the NFS Cars indicates that Norfolk Southern was aware of the dire position B&A was in by July or August of 2012 at the latest.  An August 24, 2012 email among Norfolk Southern employees includes the following assessment:

> Although [B&A] is required to return the equipment, at the present time, the only way our equipment can be returned is for NS to pay a third party to take the cars off the rails, truck to a CSXT location, and pay CSXT for movement to interchange.  As I understand, the company is on the verge of bankruptcy and we are already pursuing collections.

(ECF No. 42-10).  The Court declines to hold that B&A waived failure to mitigate damages as a defense or that's its ambiguous assertion of the defense unduly prejudiced Norfolk Southern.

Of course, as noted above, a party does not have a duty to mitigate damages where it is not aware that mitigation is necessary.  Norfolk Southern could reasonably fear that it would incur the expenses of moving the NFS Cars by truck only to have B&A second-guess its decision by, for example, arguing that it would have been less expensive to make the minimal repairs to the bridges necessary to allow the trains to return to the interchange.  This fear arguably becomes less reasonable as it became increasingly clear to Norfolk Southern that B&A was not going to be able to repair the bridges or secure permission to move the trains across them.  Based on the evidence in the record, however, the Court finds that no reasonable jury could find that Norfolk Southern had information sufficient to trigger a duty to mitigate prior to March 5, 2012, when B&A advised Norfolk Southern that its bridges were closed and it lacked the funds

necessary to repair them. Therefore, the Court grants Norfolk Southern summary judgment on all car hire accrued up to and including March 5, 2012.

### B. **B&A has not shown that mitigation was possible and cost-effective**

Norfolk Southern's second argument is that B&A has not advanced sufficient evidence to show that mitigation was possible and cost-effective to withstand summary judgment. "A defendant who claims a plaintiff's damages could have been mitigated has the burden of proving that mitigation is possible and reasonable." *Hughes*, 2007 WL 8392131, at *8. As noted above, this is typically a factual question to be resolved by a jury. *See C & O Motors, Inc.* 323 F. App'x at 197. Because B&A bears the burden, it must, at the summary judgment stage, forecast evidence that would allow a reasonable jury to reach the requisite conclusions.

Representatives from both parties have acknowledged that it would be possible to move the cars by having them hoisted by a crane onto flat-bed trucks, transported to the nearest interchange, re-railed, and returned to Norfolk Southern. (*See* Dep. of Walter K. Jones, Jr., 34:12 – 36:10, Mar. 24, 2014, ECF No. 42-12; Pippin Dep. 63:9 - 65:12.) Although Mr. Pippin testified on behalf of B&A that the company would be willing to accept ultimate responsibility for the charges of alternative transportation for the NFS Cars, for some reason, the parties have not formalized such an agreement. The plaintiff has suggested that B&A's failure to formally accept responsibility for the charges relieves Norfolk Southern of a duty to mitigate, but has not directed the Court to legal support for the argument.

Although neither party has provided a figure in terms of price, they have reached fairly similar estimates. Based on quotes he had received, Mr. Pippin estimated that it

would cost between $6,000 and $6,500 per car to move the NFS Cars by truck for a total estimated cost between $186,000 and $201,500. (*See* Pippin Dep. 63:22 – 64:11.) Mr. Jones testified that Norfolk Southern had been given a quote in 2012 for $5,500 per car.[2] Given that the value of the NFS Cars is estimated to be at least $500,000,[3] it would arguably be cost-justified to move them even if it ended up costing over twice the amount the parties estimated.

On the one hand, B&A may not simply throw up its hands on the issue of whether it is possible, feasible, and cost-effective to move the NFS Cars and thereby shift the burden to Norfolk Southern. On the other hand, the question is not whether B&A can move the cars in a cost-effective manner, but whether Norfolk Southern can do so. Thus, B&A is not required to provide exact numbers or a detailed plan for Norfolk Southern to follow in order to raise a genuine issue of material fact regarding whether mitigation is or was possible, reasonable, and cost-effective. The evidence submitted by B&A, while hardly dispositive of the question, is sufficient to raise genuine issues of material fact regarding whether Norfolk Southern had a duty to mitigate damages beginning at any time between March 5, 2012 and the present.

B&A admits that Norfolk Southern is not to blame for the fact that its cars became stranded and should not ultimately be responsible for the cost of recovering the cars. The Court agrees and grants Norfolk Southern's motion for summary judgment on the issue of liability and will enter an order to allow Norfolk Southern to retrieve the NFS Cars at B&A's expense. Thus the only issue that remains for trial is whether Norfolk

---

[2] The plaintiff's counsel also indicated that he had received an email the day the before the hearing indicating that B&A had secured another quote to move the NFS Cars by truck for a total cost of $201,000. The plaintiff's counsel said that he could not tell from the email whether that amount would cover all costs associated with returning the NFS Cars to Norfolk Southern.
[3] The plaintiff's counsel provided this figure at the hearing.

Southern is entitled to damages for car hire from December of 2013 to present, and, if so, in what amount.

## **CONCLUSION**

For the reasons set forth above, the Court finds that Norfolk Southern is (1) entitled to judgment as a matter of law on the issue of liability, (2) entitled to judgment as a matter of law on the issue of damages for car hire that accrued between October of 2010 and August of 2011, (3) entitled to judgment as a matter of law on the issue of damages for car hire that accrued between August of 2011 and March 5, 2012, and (4) entitled to damages for all costs associated with the retrieval and return of the NFS Cars in good working order or the fair market value of the NFS Cars on the date of interchange (August 26, 2011). The Court finds that genuine issues of material fact preclude the entry of summary judgment on the issue of damages for car hire that accrued between March 5, 2012, and the present. Norfolk Southern may pursue recovery of these damages at trial.

The Court hereby enters judgment for Norfolk Southern on its claim for unpaid car hire charges in the principal amount of **$103,826.37** together with prejudgment interest at the statutory prejudgment interest rate of 7.25% per annum from the date of accrual. *See* S.C. Code Ann. § 34-31-20.[4] The principal car hire total is comprised of the following amounts:

1. $26,559.53 in car hire that undisputedly accrued between October of 2010 and August of 2011; and

---

[4] The Order of the South Carolina Supreme Court setting the legal rate of interest for judgments and money decrees at 7.25% is available at
http://www.judicial.state.sc.us/courtOrders/displayOrder.cfm?orderNo=2015-01-02-01.

    2. $77,266.84 in car hire that accrued between September of 2011 and March 5, 2012, as calculated by B&A (ECF No. 33-10).[5]

The parties are hereby ordered to take the following actions to facilitate the return of the NFS Cars to Norfolk Southern. Within thirty (30) days of the entry of this order, Norfolk Southern shall provide B&A with a good faith estimate of the cost of all actions reasonably necessary to: (1) retrieve the NFS Cars from their current location in Horry County, South Carolina, and (2) return these cars in good-working order to its rail lines within sixty (60) days of B&A's response. B&A shall then have fourteen (14) days to (a) accept responsibility for these charges,[6] (b) make alternate arrangements[7] to transport the cars to Norfolk Southern within sixty (60) days, or (c) elect to pay the fair-market value of the NFS Cars on the date of interchange to B&A.

If B&A elects for Norfolk Southern to retrieve the NFS Cars or fails to respond within 14 days of receiving the proposal from Norfolk Southern, Norfolk Southern shall proceed with retrieval of the NFS Cars within 60 days. No later than seven (7) days after all the NFS Cars have been returned, Norfolk Southern shall notify the Court and B&A of the total cost of retrieving the NFS Cars from their current location and returning them to Norfolk Southern's rail lines in good working order. Should the amount required

---

[5] The fees for March were calculated by pro-rating the $12,878.64 that accrued in March of 2012.

[6] The costs to be borne by B&A specifically include, but are not limited to: (a) the cost of hoisting the NFS Cars onto a flatbed truck using a crane or other device, (b) all costs associated with transporting the NFS Cars to an interchange point with CSX Transportation, Inc. ("CSX") in Mullins, SC, by truck, and the logistics of this transportation, (c) all costs associated with re-railing the NFS Cars on rail track after their motor carrier transport, (d) the cost of any repairs to the NFS Cars required by Association of American Railroads' car repair rules that are necessary to place the NFS Cars in interstate-rail service, and (e) the freight charges associated with CSX's transporting the NFS Cars from Mullins, SC to an interchange point with Norfolk Southern.

[7] Any such alternate arrangements must place Norfolk Southern in substantially the same position as it would be if Norfolk Southern moved the cars itself.

to move the cars exceed the good faith estimate by more than ten percent (10%), B&A shall be afforded an opportunity to challenge the reasonableness of the costs before the Courts enters a final judgment.

If B&A elects to make its own arrangements to return the railcars to Norfolk Southern, no later than seven (7) days after returning the NFS Cars, B&A shall submit an affidavit detailing the steps taken to return the cars.  Norfolk Southern shall then have fourteen (14) days to file a response advising the Court of any deficiencies or additional costs that it expects to incur.  If B&A elects to compensate Norfolk Southern for the combined market value of the NFS Cars at the time of interchange (August 26, 2011), Norfolk Southern shall submit this amount to the Court and B&A with supporting documentation within thirty (30) days of B&A's election.  The Court will issue an additional order following the completion of the steps set forth above.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

February 18, 2015
Greenville, South Carolina